UNDER SEAL

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
MAR 14 2019
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN RE: )
) No. 1:19-MJ-131
EXTRADITION OF )
) UNDER SEAL
RICARDO FLORENCIO )
PELAYO VILCHEZ )

COMPLAINT
(18 U.S.C. § 3184)

I, John D. Riesenberg, being duly sworn, state on information and belief that the following is true and correct:

1. I am a trial attorney with the Office of International Affairs in the Criminal Division of the United States Department of Justice, and in this matter I represent the United States in fulfilling its treaty obligation to the Republic of Peru ("Peru").

2. There is an extradition treaty in force between the United States and Peru, the Extradition Treaty Between the United States of America and the Republic of Peru, U.S.-Peru, July 26, 2001, S. TREATY DOC. NO. 107-6 (2002) (the "Treaty").

3. Pursuant to the Treaty, the Government of Peru has submitted a formal request through diplomatic channels for the extradition of Ricardo Florencio Pelayo Vilchez ("Pelayo Vilchez").

RELEVANT LAW

4. In this context, a court's review is limited to determining whether: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the applicable treaty covers the

crimes for which extradition is requested; and (5) sufficient evidence exists to support a finding of probable cause as to each charge for which extradition is sought. *In re Extradition of Exoo*, 522 F. Supp. 2d 766, 775 (S.D. W. Va. 2007); *see also Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006); *Cheung v. United States*, 213 F.3d 82, 88 (2d Cir. 2000) ("The judicial officer's inquiry is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof.").

5. The extradition process is *sui generis*, neither a criminal nor a civil proceeding. It is primarily an executive function with a specifically defined role for a judicial officer, who is authorized by statute to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge." 18 U.S.C. § 3184; *see also Zhenli Ye Gon v. Holt*, 774 F.3d 207, 201 (4th Cir. 2014). The Secretary of State, not the court, makes the decision regarding whether the fugitive should ultimately be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *Plaster v. United States*, 720 F.2d 340, 354 (4th Cir. 1983). "This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

6. A court's role in the extradition process is to consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification – as defined in the treaty, statutes and case law – have been established. *Quinn v. Robinson*, 783 F. 2d 776, 786 n.3 (9th Cir. 1986) (citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)); *Cheung*,

213 F.3d at 88. If the court finds that the requirements for certification have been met, the court must furnish the certification to the Secretary of State, together with a copy of any testimony taken before the court, and must commit the fugitive to the custody of the United States Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184; *see Ordinola v. Hackman*, 478 F.3d 558, 609 (4th Cir. 2007) (Traxler, J. concurring); *Cheung*, 213 F.3d at 88.

7. A court has jurisdiction over a fugitive found within its jurisdictional boundaries. 18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person found within his jurisdiction . . . issue his warrant for the apprehension of the person so charged.").

STATEMENT OF FACTS

8. According to the information provided by the Government of Peru, Pelayo Vilchez was charged with aggravated theft, in violation of Articles 188 and 189 of the Peruvian Criminal Code.

9. This offense was committed within the jurisdiction of Peru. A warrant for Pelayo Vilchez's arrest was issued on November 12, 2013, by the Court of Appeals of Lima, Peru.

10. The warrant was issued on the basis of the following facts:

    a. On January 13, 1997, Juan Gualberto Arias Aguilar ("Arias Aguilar"), an employee of the Asociacion Cultural Brisas del Titicaca ("the Cultural Association"), boarded a public bus carrying a bag of cash belonging to the Cultural Association. Arias Aguilar intended to deposit the Cultural Association's cash in several banks in Lima.

    b. Three men on the bus assaulted Arias Aguilar, the bus's driver, and the bus's fare collector. At least one of the men was carrying a pistol and used it to hit Arias Aguilar on the head, knocking him unconscious. Then, the men forced

-3-

the bus driver to pull the bus off the road and stole Arias Aguilar's bag of cash. The three men drove away in a Toyota Tercel, having stolen approximately 31,475.85 Peruvian Sol and 503 U.S. dollars.

c.  Later on January 13, 1997, Arias Aguilar filed a police report and told police that his assailants had gone straight for the bag of cash in his possession, suggesting that they knew who he was and what he was carrying. Subsequently, Peruvian authorities interviewed other Cultural Association employees, including Margarita Arenas Suel ("Arenas Suel"), a member of the administrative staff.

(i)  When Arenas Suel first spoke with police, she stated that Pelayo Vilchez, a former Cultural Association employee, had told her several days prior to the incident that he intended to rob the Cultural Association over a financial dispute. Arenas Suel further stated that Pelayo Vilchez had called her on January 13, 1997, prior to the incident, to verify details about that day's cash deposit, which Arenas Suel apparently revealed.

(ii)  When Arenas Suel gave a later statement to Peruvian authorities, and also when testifying at her trial, she claimed that Pelayo Vilchez had told her that he intended to rob the Cultural Association, but that she didn't believe he would actually do so. Arenas Suel also stated that when Pelayo Vilchez called her on January 13, 1997, she had not given him any information about Arias Aguilar or the cash deposit. She further asserted that Pelayo Vilchez told her about the robbery several days after the incident and offered her money to keep quiet. But during later conversations with Pelayo Vilchez, he threatened to harm her and her

family if she talked about the robbery.

d. In January 2003, Peruvian authorities charged Pelayo Vilchez with aggravated theft and Arenas Suel as an accomplice. In October 2005, Arenas Suel was convicted for her role in the aggravated theft. Peruvian authorities deferred proceedings against Pelayo Vilchez until he could be found.

11. Pelayo Vilchez may be found within the jurisdiction of this Court at 4924 Beauregard Street #102, Alexandria, Virginia 22312.

12. Katherine C. Fennell, an attorney in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic notes by which the request for extradition was made and a copy of the Treaty, stating that the offense for which extradition is demanded is provided for by the Treaty, and confirming that the documents supporting the request for extradition are properly certified by the principal U.S. diplomatic or consular officer in Peru, in accordance with 18 U.S.C. § 3190, so as to enable them to be received into evidence.

13. The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic notes from Peru and a copy of the Treaty, and the certified documents submitted in support of the request have been provided to the Court for its review and will be available at any future hearings. They are incorporated by reference in this complaint.

14. Photographs of Pelayo Vilchez are included in these documents and can be found at Bates No.-EX-PELAYO VILCHEZ-00146, 00147, 00173 in the photocopies provided to the Court. The photographs include that which is associated with Pelayo Vilchez's Peruvian ID card issued by the National Identification and Vital Statistics Office.

15. Because Pelayo Vilchez is an international fugitive who fled Peru after committing an armed robbery, he likely would flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, I request that a warrant for the arrest of Pelayo Vilchez be issued in accordance with the Treaty and 18 U.S.C. § 3184 so that the fugitive may be arrested and brought before this Court "to the end that the evidence of criminality may be heard and considered," and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS

By: /s/
John D. Riesenberg
Trial Attorney
Office of International Affairs
Criminal Division
United States Department of Justice

Sworn to and subscribed before me this 14th day of March 2019.

___/s/___ JFA
John F. Anderson
United States Magistrate Judge
HON. JOHN F. ANDERSON
United States Magistrate Judge